IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KEVIN JACK MCMILLAN,

        Plaintiff,

v.

Commissioner, Social Security
Administration,

        Defendant.

3:16-cv-02356-BR

OPINION AND ORDER

**KEVIN JACK MCMILLAN**
1860 Guinn Street E.
Monmouth, OR 97361
(503) 917-9481

        Plaintiff, *Pro Se*

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1003

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**MARTHA A. BODEN**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104
(206) 615-3710

Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Kevin Jack McMillan seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## BACKGROUND

Plaintiff filed an application for DIB on February 25, 2010, alleging a disability onset date of December 15, 2001. Tr. 19-23.[1] On March 15, 2010, his application was denied on the ground that Plaintiff did not have enough quarters of coverage to qualify for benefits. Tr. 24-26. On March 9, 2011, Plaintiff's

---

[1] Citations to the official transcript of record filed by the Commissioner on August 11, 2017, are referred to as "Tr."

application was denied on reconsideration on the ground that
Plaintiff did not have enough quarters of coverage to qualify for
benefits and Plaintiff had not "submitted an W-2's [*sic*] to
support additional earnings." Tr. 27-28.

Plaintiff filed a second application for DIB on May 12,
2011, alleging a disability onset date of June 6, 2011.
Tr. 35-38. On May 17, 2011, his application was denied on the
ground that Plaintiff did not have enough quarters of coverage to
qualify for benefits. Tr. 39-41.

On April 2, 2013, the Commissioner sent Plaintiff a letter
in which she provided "information regarding insured status, work
and case history." Tr. 45. Specifically, the Commissioner noted
Plaintiff's date first insured is April 1, 1990, and his date
last insured is June 30, 1993. The Commissioner also noted:

> No social security taxable wages reported 1993-
> 1998. Work activity resumes and 4 quarters of
> coverage earned each of the following years 1999,
> 2000 and 2001. The earnings, although material do
> not establish a new period of insured status.

Tr. 45. Plaintiff requested a hearing.

On March 27, 2014, Matthew Brown submitted a statement to
the Commissioner in which he noted he was Plaintiff's supervisor
in a construction and landscaping business in 1996. Tr. 66.
Brown stated Plaintiff "worked under [his] supervision during the
months of July, August and September 1996. He earned a salary of
$1,800 for those three months." Tr. 66.

3 - OPINION AND ORDER

An Administrative Law Judge (ALJ) held a hearing on April 8, 2014. Tr. 75-91. At the hearing Plaintiff was not represented. Plaintiff testified he did not file a tax return in 1996 or pay FICA taxes on the earnings noted by Brown in his March 27, 2014, letter. Tr. 89. Plaintiff also testified he worked at the construction and landscaping business again in 1997, and he believed he filed a tax return for 1997. Tr. 88-89. The ALJ suggested Plaintiff supplement the record with his 1997 tax return and/or other evidence to establish that he had taxed Social Security earnings in 1997. Tr. 89.

After the hearing Plaintiff submitted to the ALJ an Account Transcript from the Internal Revenue Service (IRS), which showed Plaintiff filed a tax return for 1997 showing $3,844 in gross income for 1997. Tr. 68. The Account Transcript, however, did not reflect whether Plaintiff filed a W-2 or paid any FICA taxes on his income.

On April 25, 2014, the ALJ issued a decision in which he found Plaintiff did not have enough quarters of coverage to qualify for the benefits as of his June 6, 2001, alleged onset date. Tr. 14-18. Specifically, the ALJ noted:

> [T]he time limit to change [Plaintiff's] earnings record has expired (well over three years, three months, and 15 days have passed since 1997), and [Plaintiff] has not produced satisfactory evidence that shows SSA records are incorrect. [Plaintiff] credibly testified that he did not file a tax return in 1996 and [Plaintiff's] employer also did not report any wages that year to the IRS. This

> testimony clearly shows [Plaintiff] did not pay
> any FICA taxes for 1996. [Plaintiff] . . .
> submit[ted] a transcript from the IRS showing he
> filed a tax return in 1997, however, this document
> does not show any W2 was filed . . . or that
> [Plaintiff] or his employer paid any FICA taxes
> that year.

Tr. 18. The ALJ also noted even if Plaintiff's earning record included four quarters for 1997, he would only have 14 quarters in the relevant period "when he needs to have 17 for insured status on June 6, 2001." Tr. 18. Accordingly, Plaintiff did not have insured status for DIB at the time of his alleged onset date.

On June 12, 2014, Plaintiff filed a request for review of the ALJ's decision in which he noted the IRS no longer had a copy of his 1997 tax return and "in lieu sent a 1099," which Plaintiff enclosed with his request for review. Tr. 74.

On April 29, 2016, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. Tr. 5-7. See Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins*, 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir.

2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISCUSSION

### I. Calculation of quarters of coverage.

Before the Commissioner can make a determination as to a claimant's disability, the claimant must establish he became disabled during a period in which he had "insured status" under Title II of the Social Security Act (SSA). 42 U.S.C. § 416(i)(3). *See also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999); *Foster v. Astrue*, No. 09-CV-1422-BR, 2011 WL 530864, at *2 (D. Or. Feb. 8, 2011). To establish disability insured status under the SSA, a claimant must show he was both fully insured and that he had sufficient quarters of coverage.

"A quarter of coverage (QC) is the basic unit of social security coverage used in determining a worker's insured status. [The Commissioner] credit[s] [claimants] with QCs based on [their] earnings covered under social security." 20 C.F.R. § 404.140(a). For income earned after 1977 the Regulations governing calculation of quarters of credit provide in pertinent part:

> [W]e credit you with a QC for each part of the total wages paid . . . to you in a calendar year that equals the amount required for a QC in that

7 - OPINION AND ORDER

>     year. For example, if the total of your wages
>     . . . for a calendar year is more than twice, but
>     less than 3 times, the amount required for a QC in
>     that year, we credit you with only 2 QCs for the
>     year. . . . In addition, we cannot credit you
>     with more than four QCs for any calendar year.

20 C.F.R. § 404.142(a). Finally, the Regulations also provide:

>     In general, your social security benefits are
>     based on your earnings that are on our records
>     . . . . Basically, you receive credit only for
>     earnings that are covered for social security
>     purposes. The earnings are covered only if your
>     work is covered. If you are an employee, your
>     employer files a report of your covered earnings.

20 C.F.R. § 404.1001(a)(1). Individuals who become disabled after age 31 are required to have not "less than 20 quarters of coverage during the 40-quarter period which ends with" the quarter in which the disability occurred. 42 U.S.C. § 416(i)(3)(B)(I). If an individual becomes disabled before age 31, however, the individual is insured if he has "QCs in at least one-half of the quarters during the period ending with that quarter and beginning with the quarter after the quarter [the individual] became age 21." 20 C.F.R. § 404.130(c).

Finally, an individual may correct his Social Security earnings record for a particular year "3 years, 3 months, and 15 days after any year in which [the individual] received earnings." 20 C.F.R. § 404.802. "After the time limit for any year ends, [the SSA] may correct the record of [an individual's] earnings for that year if satisfactory evidence shows SSA records are

8 - OPINION AND ORDER

incorrect" and one of several listed exceptions applies.[2] 20
C.F.R. § 404.822(a).

## II. Analysis of Quarters of Coverage

As noted, the Commissioner denied Plaintiff's application
for DIB on the ground that he did not have enough quarters of
coverage to qualify for benefits as of his June 6, 2001, alleged
onset date.

Here Plaintiff alleges he was disabled before age 31. The
ALJ, therefore, used the QC calculation method set out in 20
C.F.R. § 404.130(c). Specifically, the ALJ noted Plaintiff
turned 21 in the fourth quarter of 1992 and there are 34 quarters
between the first quarter of 1993 (the quarter after Plaintiff
turned 21) and the second quarter of 2001 (the quarter that
includes Plaintiff's alleged onset date). Accordingly, Plaintiff
must establish he had 17 QCs during that period in order to be
insured. The Plaintiff's SSA earnings record reflects Plaintiff
had only 10 QCs during the relevant period. Plaintiff,
therefore, did not establish he had sufficient QCs during the
relevant period to be insured.

Plaintiff asserts the ALJ erred because Plaintiff should
have received an additional four QCs of coverage for 1997 based
on his landscaping work. Plaintiff relies on the IRS Account

---

[2] Plaintiff does not allege and the record does not reflect
any of the listed exceptions applies here.

9 - OPINION AND ORDER

Report and his statement that he worked and earned wages in 1997. Plaintiff, however, fails to establish that he paid Social Security taxes on his 1997 earnings. Moreover, the IRS Account Transcript reflects Plaintiff did not pay any taxes on his 1997 income. Plaintiff also has not submitted a W-2 form indicating that he paid Social Security taxes in 1997.

In addition, the ALJ found in the alternative that even if Plaintiff's SSA earnings record included the four QCs for 1997, Plaintiff would still have only 14 QCs during the relevant period rather than the 17 QCs required to establish insured status on June 6, 2001.

The Court, therefore, concludes the ALJ did not err when he concluded Plaintiff did not establish he had sufficient QCs to qualify for benefits as of his June 6, 2001, alleged onset date.

### III. Plaintiff's Other Arguments

Plaintiff also asserts the ALJ violated his right to due process when he (1) did not allow two lay witnesses to testify on Plaintiff's behalf at the hearing and (2) did not add to Plaintiff's file the medical evidence that Plaintiff submitted.

#### A. Lay-Witness Testimony

The record reflects neither of the lay witnesses that Plaintiff sought to call were intended to offer testimony on the sole issue on appeal; *i.e.,* whether Plaintiff paid Social Security taxes on income earned during the relevant period. The

lay-witness testimony, therefore, was irrelevant and would not have affected the outcome of Plaintiff's case. The Court, therefore, concludes the ALJ did not err when he did not permit the two lay witnesses to testify at Plaintiff's hearing.

**B.  Medical Evidence**

The ALJ correctly concluded Plaintiff did not establish that he had sufficient QCs to qualify for benefits as of his June 6, 2001, alleged onset date. This is a threshold issue, and, therefore, the ALJ did not determine whether Plaintiff met the medical criteria for disability. Under these circumstances Plaintiff's medical evidence was irrelevant to the issue on appeal.

Accordingly, the Court concludes the ALJ did not err when he did not add Plaintiff's submitted medical evidence to Plaintiff's file.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 15th day of March, 2018.

*[signature]*
ANNA J. BROWN
United States Senior District Judge